**WESTERHAUS COMPANY, Inc., a Corporation, Plaintiff, v. CINCINNATI (City) et, Defendants.**

Common Pleas Court, Hamilton County.

No. A-129385. Decided July 21, 1953.

294

Loyal S. Martin, Cincinnati, for plaintiff.
Henry M. Bruestle, City Solicitor, James W. Farrell, Jr.,
Asst. Solicitor, Ralph E. Cors, Asst. City Prosecutor, Cincinnati,
for defendants.

## OPINION

By BELL, J.

This is an action for a declaratory judgment against the City of Cincinnati, a municipal corporation (hereinafter called the City); W. R. Kellogg, the City Manager (hereinafter called Manager); George C. Schiele, City Treasurer (hereinafter called Treasurer); Oris E. Hamilton, Director of Safety (hereinafter called Director); and Stanley Schrotel, Chief of Police (hereinafter called Chief).

The petition alleges in substance that plaintiff is a corporation organized and doing business under the laws of the State of Ohio with its principal place of business in Hamilton County; that it is engaged in lawful business, including the selling, leasing, renting, operating or exhibiting certain amusement devices known as pinball machines in the City under licenses issued by the City; that the licenses are issued by the Treasurer pursuant to an ordinance of the City; that the officers named as defendants, individually and collectively, threaten to seize, confiscate and destroy the licensed amusement devices, known as pinball machines, without court order or court procedure; that defendants claim the right to determine for themselves whether such amusement devices are or are not gambling devices and that the defendants threaten to revoke the permits and licenses of plaintiff as distributor and exhibitor. The prayer of the petition is for a temporary restraining order and a declaration of the rights of the parties.

The answer of defendants admits that plaintiff is a corporation engaged in the business as set forth in its petition; that the distribution and exhibition of pinball machines in the city is governed by Chapter 731 of the Code of Ordinances of the City of Cincinnati. Section 731-1 of the Ordinance reads as follows:

"No person, firm or corporation shall engage in the business of selling, leasing, renting, operating or exhibiting pinball machines, without first obtaining a license so to do and conforming to the regulations provided for such business in accordance with the provisions of this chapter."

Several sections of the ordinance are set forth in the answer; that it is the duty of defendants to enforce the ordinance and that the amusement devices, known as pinball machines, are being operated as gambling devices contrary to law.

A temporary restraining order was issued which was later modified.

The cause was heard upon the pleadings and the evidence.

The first question to be considered is whether an action under the Uniform Declaratory Judgment Act is a proper proceeding to raise the questions which plaintiff seeks to have determined.

Sec. 12102-1 GC, reads as follows:

"Declaratory judgments, when granted, force and effect. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."

Sec. 12102-2 GC, reads as follows:

"Construction and validity of instrument, etc. may be determined, when. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Sec. 12102-12 GC, reads as follows:

"Purpose of act. This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

In the instant case, under the provisions of the quoted sections of the Uniform Declaratory Act, it is the opinion of the Court that this proceeding was properly instituted.

Before proceeding to a consideration of the other legal questions presented certain general observations should be noted:

1. There is no claim that any of the amusement devices are located within three hundred feet of any school building or grounds;

2. There is no claim that any person under the age of twenty-one years has been permitted to play or use the devices;

3. There is no claim that there has been a pay off of money or other tangible property.

The answer contains an allegation that the devices are being used as gambling devices. No evidence was offered to support such a claim. The notice to plaintiffs (Ex. 1) sets forth that any pinball machines on free play will be con-

fiscated and destroyed and the exhibitor's license revoked for one year.

In the brief of defendants it is stated that three questions are presented:

"1. Whether the machines in question constitute gambling devices.

2. The constitutionality of Section 731-23 of the Code of Ordinances of the City of Cincinnati, authorizing the seizure and destruction of pinball machines operated contrary to the provisions of the laws of the State of Ohio or the ordinances of the City of Cincinnati.

3. Right of the city treasurer to revoke licenses for the violation of provisions of the Code of Ordinances governing the operation of pinball machines without any judicial determination as to such violation."

The defendants' claim to justification for the proposed action is that by the player making a certain score he or she may win the right to play one or more additional games, commonly called "free play" without the insertion of additional coins into the device.

Stated in another fashion the main question presented is whether "free play," ipso facto, constitutes the devices involved herein as gambling devices per se. If the devices are not gambling devices per se, or are not being used for gambling purposes, then neither the Statutes of Ohio nor the Ordinance of the City of Cincinnati are being violated.

The defendants rely strongly on two decisions of the Supreme Court, namely,

**Myers v. City of Cincinnati, 128 Oh St 235; and Kraus v. City of Cleveland, 135 Oh St 43.**

In the Myers case the Court was reviewing a criminal case after conviction of the defendant in the Municipal Court of Cincinnati. The question presented was whether the ordinance of the city relating to slot machines was constitutional and the Court answered that question in the affirmative.

In the Kraus case the Court was considering the question of the validity of an ordinance of the City of Cleveland relative to the licensing of slot machines. The Court held that the city was without power to pass an ordinance granting a license to exhibit a gambling device  In that case the skill of the player could in no way affect the result. In commenting upon that feature of the case the Court, at pages 45 and 46. used the following language:

"The language in the ordinance, 'whether accompanied by the return of tokens, slugs or any other evidence of the result of such operation or not,' makes the device so returning tokens

or slugs licensable, **though the return and the number of tokens returned and the frequency of such return be left wholly to the automatic or mechanical operation of the device.** Nowhere in the ordinance is it provided that the machines be so constructed as to place the operation thereof under the control of the skill of the player. **Under the terms of the ordinance, it is perfectly proper for the automatic or mechanical operation of the device, without the intervention of the skill of the player to determine the result of the game. Where the result of a game is determined by the automatic or mechanical operation of the device upon which the game is played, and not subject to the control of the player, it is a result determined by chance."** (Emphasis added.)

As I read and construe the last mentioned case, the above quoted language is the foundation upon which the decision rests.

Both those cases involved slot machines; the Kraus case was decided under the statute then in force. The Court does not consider either of those cases as determinative of this controversy.

The ordinance here in question is found in Chapter 731 of the Code of Ordinances of the City of Cincinnati. No useful purpose would be served by setting forth the ordinance in its entirety. Sections 731-9, 731-21 and 731-23, involved in the instant case, are hereinafter quoted.

Before proceeding to the examination of the statutes it should be noted that devices such as are here in controversy, lately have been the subject of much legislation and also much litigation. Several states have, in the past few years, enacted statutes specifically exempting "free play" pinball machines from the operation of gambling laws within these states, to wit: Arkansas, Kentucky, Louisiana, Massachusetts. Mississippi, South Carolina and, most recently, Illinois. In those states the question of whether "free play" pinball machines are gambling devices has been laid to rest.

The decisions in various jurisdictions are too numerous to mention. Citation of only a few will suffice to disclose the general trend of the decisions.

In re: Wigton, 30 A 2352 (Pennsylvania); State v. Betti, 42 A 2-640 (New Jersey); Gaver v. Whelan, 138 P 2-763 (California); State v. Waite, 131 P 2-708 (Kansas); Commonwealth v. Kling, 13 A 2-104 (Pennsylvania); State v. One Pinball Machine, 224 SW (2d) 854 (Missouri); Washington Coin Machine Assn. v. Callahan, 142 F 2-97; Davies, et al v. Mills Novelty Co., 70 F 2-424; Mills Novelty v. Farrell, 64 F 2-476.

The case which the Court has been able to discover which most nearly touches upon the proposition which is of major

importance is the case of Deed v. Stoutamire, et al decided by the Supreme Court of Florida in 1951, which case will be discussed later.

The General Assembly in 1951 repealed §13066 GC and passed the present §13066 and §§13066-1, 13066-2, 13066-3 and 13066-4 GC.

Sec. 13066 GC now reads as follows:

"Exhibiting gambling device for gain, exceptions. Whoever keeps or exhibits for gain or to win or gain money or other property, a gambling table, or faro or keno bank, or a gambling device or machine, other than as is defined in §§13066-1, 13063, 13064 GC, or keeps or exhibits a billiard table for the purpose of gambling or allows it to be so used, shall be fined not less than fifty dollars nor more than five hundred dollars and imprisoned not less than ten days nor more than ninety days, and shall give security in the sum of five hundred dollars for his good behavior for one year."

Sec. 13066-1 GC, reads as follows:

"Gambling device defined; exceptions. As used in §13066-2 and §13066-3 GC, the term 'gambling device' means any slot machine or any other machine or mechanical device, other than as is defined in §13063 and 13064 GC, an essential part of which is a drum or reel with insignia thereon which when operated may deliver as the result of an element of chance, any money, property, or other thing of value or by the operation of which a person may become entitled to receive as the result of the application of an element of chance, any money, property, or other thing of value; or any machine or mechanical device, other than as is defined in §13063 and §13064 GC, designed and manufactured to operate by means of insertion of a coin, token, or similar object so that when operated it may deliver as the result of the application of an element of chance, any money, property, or other thing of value; or any subassembly or essential part intended to be used in connection with any such machine or mechanical device."

Sec. 13066-2 GC, reads as follows:

"Ownership, possession, exhibition of 'gambling device' unlawful; exceptions. It shall be unlawful to own, possess, or exhibit any gambling device, other than as is defined in §13063 and §13064 GC. Nothing contained herein shall be construed to prohibit the possession of a gambling device during the act of and for the sole purpose of transportation except as prohibited by §13066-3 GC."

Present §13066 GC is very similar to prior §13066 GC. Sec. 13066-1 GC, for the purpose of construction of §13066-2 and §13066-3 GC, defines the term "gambling device." Sec. 13066-2 GC, makes the ownership of any gambling device unlawful

except for the sole purpose of transportation; and §13066-3 GC makes it unlawful to transport any gambling device for delivery within the State of Ohio.

Section 731-9 of the Code of Ordinances of the City of Cincinnati reads as follows:

"Mechanical Requirements. It shall be unlawful for an exhibitor or other person to exhibit, operate or have in his possession a pinball machine which is so constructed as to make possible, either directly, or by the use of an adjustment, the return of cash, tickets, discs or other tokens or certificates of any kind to a player operating the same. whether or not such tokens or certificates have a value of any kind or authorize further playing or other privileges. Only machines operated exclusively for the amusement provided by the operation thereof shall be licensed. (Sec. 179-5, Ordinance 95-1942.)"

Section 731-21 of the Code of Ordinances reads as follows:

"Revocation of License. Should any distributor or exhibitor violate or fail to comply with any of the provisions of this chapter, it shall be the duty of the city treasurer to revoke his license. In case of the revocation of an exhibitor's license. the licenses of all machines operated by him or on his premises, shall be revoked and such machines removed from the premises within 24 hours thereafter. A distributor or exhibitor whose license has been revoked shall not be eligible to apply for or receive a new license within the period of one year after the revocation. (Sec. 179-12, Ord. 95-1942.)"

Section 731-23 of the Code of Ordinances reads as follows:

"Seizure and Destruction of Pinball Machines. If any pinball machine is used as a gambling device or is otherwise operated contrary to the provisions of the laws of the state of Ohio, or of this chapter, such machine may, in the discretion of the city manager, be seized and destroyed, as in the case of gambling devices. (Sec. 179-13, Ord. 95-1942.)"

To be violative of Section 731-9 of the Ordinance the machine must return "cash," "tickets," "discs" or other "tokens" or "certificates." The devices in the instant case do not return "cash," "tickets," "discs" or other "tokens" or "certificates" and hence do not violate Section 731-9 of the ordinance.

This case, therefore, must be resolved by a determination of the question whether the operation of these devices violate any state statute.

The sections of the statutes heretofore quoted have been held constitutional. (Dodson v. City of Urbana, No. 131, Court of Appeals Champaign County.)

In the instant case the plaintiff introduced evidence which disclosed substantially the following facts: That the city

had issued licenses for pinball machines of the character here involved for a number of years prior to 1951; that all of the pinball machines owned and exhibited by plaintiff were licensed by the city and that all license fees had been fully paid; that on or about June 27th, 1951, the Treasurer advised the plaintiff that the City Solicitor had made a ruling that pinball machines which granted "free play" were gambling devices per se; that effective July 1st, 1953, the ruling would become effective and plaintiff's property thereafter would be seized and destroyed and its licenses revoked.

The ruling of the City Solicitor (Ex. 2) apparently was made upon authority of a judgment of the Municipal Court of Cleveland. (Zelles v. Matowitz, 22 O. O. 261.) A later decision by the Court of Appeals of this district apparently was overlooked. The Court of Appeals held, "A pinball machine is not per se a gambling device." (Brafford, Appellant v. Calhoun, Chief of Police, Appellee, 72 Oh Ap 333.)

A pinball machine of the character owned and exhibited by plaintiff, and licensed by defendants, was offered in evidence and plaintiff sought and was permitted to introduce testimony to prove that the result of the game and the score attained by the player was not controlled by the mechanism of the device but by the skill of the player. The demonstration clearly disclosed that from the time each of the five balls, the playing of which constitutes a game, is put in motion by the player until it came to rest is, at all times, under the control of the player. Where those five balls came to rest determines the score and where each ball comes to rest is dependent upon the skill of the player and is not controlled by the mechanism of the device.

The machine returns no money, property, tickets, discs, tokens or certificates. When the game is completed if the player has scored a sufficient number of points he may play one or more games without the insertion of additional coins, depending on the total score. If the player does not score sufficient points and desires to again play, he or she must insert another five cent coin.

There is no evidence or even a claim (except an allegation in the answer that the devices were being used for gambling purposes) that any of the devices have ever been used for gambling purposes.

The defendants in this case offered no evidence, although defendants had full opportunity to show that the result attained was dependent upon the mechanism of the device.

The defendants chose to stand upon the proposition that these pinball machines are gambling devices per se and hence

they have the right to seize and destroy them and to cancel plaintiff's licenses.

As demonstrated these devices could be likened to a billiard game or the bowling of ten pins. It is a matter of common knowledge that all of those games contain some element of chance but the result is almost entirely controlled by the skill of the player. Let us assume that the proprietor of a billiard hall would offer a free game if the player made twenty-five points consecutively in a billiard game, or that the proprietor of a bowling alley would offer a free game to any bowler who made a score of 250 or more in one bowling game.

In my judgment it would be a bold man who would assert that either of those proprietors were engaged in gambling— or that the billiard table or the bowling alley were gambling devices per se. Where a court is called upon to construe and apply statutes or ordinances such as those involved in the instant case the purpose to be accomplished is one of the pole stars of construction. Here the purpose of the statutes and the ordinance is to suppress gambling and to punish violators.

There is a clear distinction between devices for amusement and devices for gambling purposes. The licensing by a municipality of amusement devices is a proper exercise of the police power. A municipality is without power to license gambling devices. (See **Bauer v. Cleveland, 135 Oh St 143.**) Often the difficulty in such cases is in determining whether the device in question is an amusement or a gambling device. To determine that question the courts consider the construction of the device and the purpose to which it has been put.

In the instant case there is no mechanism which controls the play, nor is the device designed for gambling purposes. There is no evidence that the devices owned by plaintiff have ever been used for gambling purposes. As has been stated the evidence makes it perfectly clear that the player controls the ball from the time it is put in motion until it comes to rest.

Reverting again for the purpose of emphasis to the Myers and Kraus cases, supra, it is my opinion that those cases are not applicable to the problem here presented.

In the Myers case the defendant had been tried and convicted of exhibiting a gambling device; the only question presented and decided was the constitutionality of the ordinance.

In the Kraus case the only question presented and decided was the power of a municipality to pass an ordinance permitting the licensing of gambling devices.

Devices such as here in evidence offer the opportunity to

play a game, primarily one of skill, with little element of mechanical chance and so long as the devices are not used for gambling purposes they are not gambling devices per se merely because the player may win the right to play a free game.

The Florida case heretofore referred to involved a "free play" miniature bowling game, the outcome of which game depended upon the skill of the player. The Court held that the device was not a gambling device.

Coming now to a consideration of questions 2 and 3 as stated in defendants' brief. Courts will always indulge a strong presumption in favor of the constitutionality of legislation but will not pass upon the constitutionality of a statute or ordinance unless and until it becomes necessary so to do in order to dispose of the case presented. **Village of Strongville v. McPhee, 142 Oh St 534.** That principle was reiterated in **American Cancer Society, Inc., et al v. City of Dayton, 160 Oh St 114.** The answers to questions 2 and 3 as stated by defendants are not necessary to a disposition of this case and have not been considered or decided.

To summarize, the Court finds and declares that:

1. The plaintiff is a corporation organized and existing under the laws of the State of Ohio.

2. That plaintiff is engaged in the business of owning and exhibiting amusement devices.

3. That plaintiff has complied with the ordinances of the city with reference to licensing such devices.

4. That the city issued licenses for devices of the character offered in evidence. (Exhibit 4.)

5. That after accepting the license fees and, during the life of the licenses, the City threatened to seize and destroy plaintiff's property and to revoke its license as a distributor.

6. That the device offered in evidence (Exhibit 4) is an amusement device and not, as claimed by defendants, a gambling device per se.

7. That the game played upon such device is one primarily of skill with little element of mechanical chance.

8. That such devices (Exhibit 4) do not violate the statutes of the State of Ohio or the ordinance of the City of Cincinnati, Ohio.

9. That the City is without power or authority to seize and destroy such devices, or to cancel plaintiff's license as an exhibitor, unless and until the City can prove that such devices are being used for gambling purposes with the knowledge or consent of the exhibitor.

A decree may be prepared in accordance with the above findings and declarations.