## CAVALIER v. BOARD OF LIQUOR CONTROL.

Common Pleas Court, Franklin County.

No. 188177.   Decided April 26, 1954.

Paul F. Ward, Columbus, for appellant.

C. William O'Neill, Atty. Genl., Kiehner Johnson, Asst. Atty. Genl., Columbus, for appellee.

**OPINION**

By CLIFFORD, J.

This cause is before this Court on appeal from an order of the Board of Liquor Control, suspending the appellant's Class D-1 and D-2 permits, Certificate No. 65171 for a period of fifteen days.

The order appealed from is set forth as follows:

"This cause came on to be heard on the charges brought against the above permit holder, to-wit—

" 'That on June 24, 1953, you and/or your agents or employees did have, harbor, keep, exhibit, possess or employ, or allow to be kept, exhibited, or used in, upon or about your permit premises, devices, machines, or apparattii, to-wit, a "Star Series" pinball machine, which may or can be used for gaming or wagering upon your permit premises on a game of chance, to-wit, playing the above pinball machine for value— in violation of provisions of the Liquor Control Act and regulations of the Board of Liquor Control,'

"and said permit holder was duly served with a copy of said charges and notice of the hearing thereon; and said permit holder, appearing before the Board of Liquor Control to answer said charges, denied the same, and thereupon the matter was submitted to the Board of Liquor Control on the evidence. and said Board. in consideration thereof, finds that the above permits should be suspended.

"It is therefore ordered and adjudged that Class D-1 and D-2 permits, Certificate No. 65171, be, and the same are suspended for a period of fifteen (15) days, beginning August 31, 1953, and ending at midnight, September 14, 1953."

The charges preferred against the said permit holder read as follows:

"That on June 24, 1953, you and/or your agents or employees, did have, harbor, keep, exhibit. possess or employ, or allow to be kept, exhibited. or used in, upon or about your permit premises, devices, machines or apparatti, to-wit, a 'Star-Series' pinball machine, which may or can be used for gaming or wagering; and further, that you did allow or conduct gaming

or wagering upon your permit premises on a game of chance, to-wit, playing the pinball machine for value—in violation of the provisions of the Liquor Control Act and the regulations of the Board of Liquor Control."

Counsel for appellee contends that appellant violated §13066 GC and regulation No. 53, Section II of the Board of Liquor Control.

The facts are gathered from the testimony of an investigator of the Department of Liquor Control. He testified that on June 24, 1953 at about 5:15 p. m. he visited the permit premises known as Kozy Korner, located at First and Filmore Streets, Powhatan, Ohio, and that another investigator accompanied him on the visit. The operative facts pertaining to the pinball machine are graphically set forth in his testimony, as follows:

"Q. Upon entering the premises, Sir, what did you do? A. We went to the bar, and purchased a beer, and received some nickels in change, and played the pinball machine that was located in the center of the premises.

"Q. And would you tell us how much it cost you to play this pinball machine? A. Well, I played it a few times.

"Q. How much did it cost you to play this machine, Sir? A. Oh, approximately forty cents.

"Q. Is this the type of a machine that requires a coin to be deposited before you can play? A. It is.

"Q. And how much is required before you can play the machine? A. A nickel. One nickel.

"Q. And will you explain to the Board how this game is played? A. Well, this is a machine called a 'Star Series.' It is a baseball machine. You put a nickel in, and you press one lever with one hand, and a ball shoots out, and you got to press another lever that represents like it was a bat in your hand, and you got to hit a ball, and it would go into areas which would indicate a base hit or two base hits, or a home run, or—any baseball play it would represent.

"Q. How long did you continue to play this machine? A. For quite sometime.

"Q. And did you win? A. I did.

"Q. And what did you win? A. Two free games.

"Mr. Krupansky: At this time, I would like to have a five-minute recess, please."

Whereupon, the hearing recessed for five minutes, after which time the following testimony was heard, and the following proceedings were had:

(Mr. Krupansky resumes direct examination of Mr. Bednar.)

"Q. Now, Mr. Bednar, I'll show you what has been marked

for identification purposes only as 'Department's Exhibit A,' and I'll ask you if you can identify this exhibit? A. That's the machine that came out of the Kozy Korner Restaurant.

"Q. And is this the machine that you played? A. It is.

"Q. Now, Sir, would you briefly explain how you played this machine on that particular date? A. I would put a nickel in that slot up on top, and that would put the machine into working order, and you would have to push this lever that way, and it would shoot a ball and come flying out there.

"Q. From the pitcher's box here? A. And you would have to work these handles here; this lever here, that represents the baseball bat,—would try to drive it out to the playing field. Wherever the ball lit would designate,—if a single, the light would light here, and if you were fortunate enough to get a triple, it would light all these lights, and break this supposedly base runner into three runs.

"Mr. Krupansky: You may cross-examine.

Cross-Examination

"By Mr. Ward:

"Q. Mr. Bednar, it's only possible to put one nickel in this machine, and you get so many balls, and you can play—A. Until your three outs have expired.

"Q. And is it possible to change the odds on this machine, by putting additional nickels into it, or anything?

"Mr. Schuessler: What do you mean, 'additional odds'?

"Q. Like a bingo machine. In other words, taking a chance in working more games. Mr. Bednar, this actuater,—I'll call it, —this bat, you work with your hands. Is that right? A. Yes.

"Q. This lever here, and is it possible to work that—it is different when the ball shoots out from the pitcher's mound. You have to hit that just right. In other words, it is possible to have a strike, and not miss it at all or foul it? A. Either you miss it or foul it.

"Q. In other words, you could hit it easily, over here, if you only got this bat this far by using this actuater. A. I believe when you switch the handle of the bat, it goes completely around. You mean to hold it back?

"Q. Yes, can you use that actuater with a certain amount of pressure? A. As if you were going to—

"Q. In other words, it is possible to time yourself on the so-called bat? A. It would take coordination.

"Q. Coordination. Do you have an opinion as to whether or not this is a game of skill? A. Well, I have never played the machine before, and I won a couple of games on it, so it was a matter of luck.

"Q. Did everybody else win a couple of games that played

it? Did the other inspector? A. No, he didn't win any games.

"Mr. Ward: That's all I have.

### Redirect Examination

"By. Mr. Krupansky:

"Q. Now, Inspector Bednar, you stated that after you had played the machine, you received a score, where you got two free games. A. I did.

"Q. Now; to play these additional games that came up on the indicator, were you required to insert additional coins,— money? Did you have to pay additional money to play the two games that you had won? A. No.

"Mr. Krupansky: That's all.

### Recross Examination

"By Mr. Ward:

"Q. Mr. Bednar, is the machine in working condition now, do you think? A. I think it is except the plate stakes that's up in this way, and it has four legs.

"Q. It is possible it may not be in working condition. A. Probably not now, the way it has been handled.

"Mr. Ward: That's all."

The manager of the permit premises testified that the pinball machine in question registers free games; by the use of a so-called bat, or lever, if you do it right (referring to co-ordination of the bat [lever] with ball) you get a larger number of hits, or three-bagger, or home-run, and that you get free games when you obtain a certain score. Reasonable minds cannot differ on a conclusion of the facts that by the player making a certain score he or she may win the right to play one or more additional games, commonly called "free play" without the insertion of additional coins into the pinball machine, and that its successful operation to win "free play" depends on the coordination skill of the player.

The main question presented is whether "free play," ipso facto, constitutes the device herein as a gambling device per se. If the device is not a gambling device per se, or was not being used for gambling purposes, then neither the statutes of Ohio nor the Regulation of the Department of Liquor Control was violated.

Counsel for appellees rely on a decision of the Supreme Court, namely **Kraus v. City of Cleveland, 135 Oh St 43,** 19 N. E. 2d 159. In that case, the Court was considering the question of the validity of an ordinance of the City of Cleveland relative to the licensing of slot machines. The Court held that the city was without power to pass an ordinance granting a license to exhibit a gambling device. In that case the skill of the player could in no way affect the result. In commenting upon that

feature of the case the Court, **135 Oh St** at **pages 45** and **46,** 19 N. E. 2d at page 160, used the following language:

"The language in the ordinance, 'whether accompanied by the return of tokens, slugs or any other evidence of the result of such operation or not,' makes the device so returning tokens or slugs licensable, **though the return and the number of tokens returned and the frequency of such return be left wholly to the automatic or mechanical operation of the device.** Nowhere in the ordinance is it provided that the machines be so constructed as to place the operation thereof under the control of the skill of the player. **Under the terms of the ordinance, it is perfectly proper for the automatic or mechanical operation of the device, without the intervention of the skill of the player, to determine the result of the game. Where the result of a game is determined by the automatic or mechanical operation of the device upon which the game is played, and not subject to the control of the player, it is a result determined by chance."** (Emphasis ours.)

The Kraus case involved slot machines and was decided under the statute then in force. This Court does not consider it applicable to the case at bar.

The General Assembly in 1951 repealed §13066 GC and passed the present §13066 and §§13066-1, 13066-2, 13066-3 and 13066-4 GC.

**Sec. 13066 GC** reads

"Exhibiting gambling device for gain; exceptions.

"Whoever keeps or exhibits for gain or to win or gain money or other property, a gambling table, or faro or keno bank, or a gambling device or machine, other than as is defined in §§13066-1, 13063 and 13064 GC, or keeps or exhibits a billiard table for the purpose of gambling or allows it to be so used, shall be fined not less than fifty dollars nor more than five hundred dollars and imprisoned not less than ten days nor more than ninety days, and shall give security in the sum of five hundred dollars for his good behavior for one year."

**Sec. 13066-1 GC,** reads:

" 'Gambling device' defined; exceptions.

"As used in §§13066-2 and 13066-3 GC, the term 'gambling device' means any slot machine or any other machine or mechanical device, other than as is defined in §§13063 and 13064 GC, an essential part of which is a drum or reel with insignia thereon which when operated may deliver as the result of an element of chance, any money, property, or other thing of value or by the operation of which a person may become entitled to receive as the result of the application of an element of chance, any money, property, or other thing of value; or

any machine or mechanical device, other than as is defined in §§13063 and 13064 GC, designed and manufactured to operate by means of insertion of a coin, token, or similar object so that when operated it may deliver as the result of the application of an element of chance, any money, property, or other thing of value; or any sub-assembly or essential part intended to be used in connection with any such machine or mechanical device."

Sec. 13066-2 GC, reads:

"Ownership, possession, exhibition of 'gambling device' unlawful; exceptions.

"It shall be unlawful to own, possess, or exhibit any gambling device, other than as is defined in §§13063 and 13064 GC. Nothing contained herein shall be construed to prohibit the possession of a gambling device during the act of and for the sole purpose of transportation except as prohibited by §13066-3 GC.".

The sections of the statutes heretofore quoted have been held constitutional. **Dodson v. City of Urbana, Oh Ap,** 109 N. E. 2d 555.

Regulation No. 53, Section II, of the Ohio Board of Liquor Control reads:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder any device, machine, apparatus, book, records, forms, tickets, papers or charts which may or can be used for gaming or wagering or the recording of wagers, pools or chances on the result of any contest, or allow or conduct gaming or wagering on such premises on any game of skill or chance."

Said quoted regulation implements the statutes heretofore quoted and has the force and effect of a statute, but assumes no greater stature than the said statutes made and provided by the Legislature. This case, therefore, basically, must be resolved by a determination of the question whether the operation of said pinball machine violates any state statute.

The Court of Appeals held, **"A pinball machine is not per se a gambling device." Brafford v. Calhoun, 72 Oh Ap 333,** 51 N. E. 2d 920.

The pinball machine, "Department's Exhibit A," by agreement of counsel for the respective parties to this case, licensed by the Village of Powhatan Point, Ohio, pursuant to the ordinance of council of said village, granted unto appellant (See "Permittee's Exhibit One"), was operated in the presence of this court. The demonstration clearly disclosed that from the

time each of the five balls, the playing of which constitutes a game, is put in motion by the player until it came to rest is, at all times, under the control of the player. Where those five balls came to rest determines the score and where each ball comes to rest is dependent upon the skill of the player and not controlled by the mechanism of the machine.

The machine returns no money, property, tickets, discs, tokens or certificates. When the game is completed, if the player has scored a sufficient number of points, he may play one or more games without the insertion of additional coins, depending on the total score. If the player does not score sufficient points and desires to again play, he must insert another coin.

There is no evidence or even a claim (except the allegation in the charges preferred against the permit holder) that the pinball machine was being used for gambling purposes, and the demonstration of the machine showed conclusively that the result attained was **not** dependent upon the mechanism of the device. Hence, appellee must stand upon the proposition that this pinball machine is a gambling device per se, and that they have the right to seize it and suspend or revoke appellant's permits.

A device such as here in evidence offers opportunity to play a game, primarily one of skill, with little element of mechanical chance and so long as the device is not used for gambling purposes, it is not a gambling device per se merely because the player may win the right to play a free game. The Court further finds that the operation of the machine here in evidence does not violate any state statute. Brafford v Calhoun, supra. See Deeb v. Stoutamire, Fla., 1951, 53 So. 2d 873; Westerhaus Co., Inc., v. City of Cincinnati, Com. Pl., —— N. E. 2d ——, Bell, J.

When we apply the legal pronouncements, supra dictus, to the facts of the appeal now before us, we have no hesitancy in finding, and holding, that the order appealed from is **not** supported by reliable, probative and substantial evidence, and is **not** in accordance with law. The order of the Board is reversed.