**STICKLEY et, d. b. a. STICK'S PLACE, Appellant, v. BOARD OF LIQUOR CONTROL et, Appellees.**

Common Pleas Court, Franklin County.

No. 189232.   Decided November 19, 1954.

Isadore Topper, Columbus, James W. Williamson, Wauseon, Robert N. Gorman, Cincinnati, Hugh Jenkins, Leonard Stern, Columbus, for appellants.

C. William O'Neill, Atty. Genl., Kiehner Johnson, Robert Krupansky, Asst. Attys. Genl., Columbus, for appellees.

**OPINION**

By BARTLETT, J.

**BOARD OF LIQUOR CONTROL ORDER (SUSPENDING FOR 15 DAYS APPELLANT'S CLASS C-2 and D-1 PERMIT), REVERSED.**

This is an appeal from an order of the Board of Liquor Control, suspending the Class C-2 and D-1 permits of appellants for 15 days.

The suspension was for the alleged violation of the Liquor Control Act and Regulation 53 of the Board of Liquor Control, based on two counts: 1. exhibiting a gambling device on the permit premises, to-wit: a Bally Beach Bingo Type Pinball Machine, 2. allowing gambling on the permit premises, to-wit: playing of said pinball machine, which resulted in the delivery of free games or plays.

The facts were on July 16, 1953, an agent of the Liquor Control Department accompanied by one of its investigators, entered Stick's Place in Wauseon, the premises of the appellants, the holders of the C-2 and D-1 permits in question. The agent found a pinball machine in the tavern. He inserted a nickel in the machine, obtained five balls which he played without any result. He then inserted a second nickel, obtained five more balls and after playing it this time, the machine registered that he was entitled to four free games. Without inserting any other nickels, he played one of the free games. He did not at any time receive any cash, tokens, merchandise, any monetary or other compensation or award from anyone. After playing the game, the agent identified himself to one of the proprietors, and later a citation was issued against the permit holders for violation of the Liquor Control Act and Regulation 53 of said Board, and the machine was seized by the Department. This was all the factual evidence presented at the hearing before the Board, all of which is not denied by appellants.

There was some testimony by a licensed electrical and mechanical engineer and professor of Electrical Engineering at Ohio State University, who was permitted to toy with the machine, who related the results of his experiments with the machine.

The sole question is whether a pinball machine that permits "free plays" if a high score is achieved is a gambling device, or merely an amusement device.

The testimony of the engineer and professor as an alleged expert offered little of interest or value, if any; and does not indicate that he was as much of an expert as even the agent who, no doubt, knew more about such machines. This Court is of the opinion that the testimony of the engineer-professor did not qualify him as an expert. **Tully v. Mahoning Express Co., 161 Oh St 457.**

**Sec. 2915.16 R. C.**, defines a gambling device, and being of a penal nature, the rule of strict construction applies. No crim-

inal case has been called to the Court's attention wherein this statute has been construed relative to the subject matter, of whether the mere privilege of free plays obtained for high scores makes the machine a gambling device where no tangible article, such as a token, is delivered. The criminal court is the proper forum for such a determination.

It is argued by counsel for the Board that the mere privilege of free play, resulting from the player's manipulation of the machine, affords additional amusement which is a thing of value; that if the privilege of the free play is exercised by merely putting the machine in further motion, this is a game of chance played for the gain of a thing of value, which constitutes gambling rather than pure amusement; and that, consequently, the machine is a gambling device rather than an amusement device.

It is a novel theory at least, that if this machine affords more amusement, it ceases to be an amusement device, and thereby becomes a gambling device.

This argument is based upon a refinement of reasoning that calls for fine spun distinctions without any real differences, which cannot be sustained under the canons of strict construction of penal statutes and regulations.

The Court's attention has been called to the decision in the case of Ferguson, et al. v. City of Columbus, et al., No. 187,169, on the dockets of this Court, wherein Harter, J., upheld the constitutionality of the Columbus City Ordinance, as a valid exercise of police power, in prohibiting expressly the possession or exhibition of so-called pin ball game devices, "which tends to encourage gambling or which registers odds or a score, or which is adapted or may readily be converted into such machine, device," etc.

The enactment of such an ordinance would indicate that the City Council realized the necessity for such supplemental legislation, due to the inadequacy of the Criminal Code of the state governing such devices, either because the statutes of the state do not prohibit such devices, or the difficulty the city law enforcement agencies found in securing convictions therefor under the state laws.

"Generally, the power of municipalities to enact and enforce police regulations within their boundaries is only limited by general laws in conflict therewith." **Myers v. City of Cincinnati, 128 Oh St 235, 238;**

"A charter city may validly legislate by ordinance with respect to lotteries and schemes of chance * * * provided such ordinances are not in conflict with general laws or the Constitution." **City of Columbus v. Barr, 160 Oh St 209.**

The City Council of a municipality is endowed with legislative power, but an Administrative Board is a mere creature of the General Assembly and does not possess legislative authority to supplement and supply omissions in laws enacted by its creator, the General Assembly. Like the courts, such agencies lack authority to supply, extend or improve the provisions of a statute to meet a situation not provided for. **State ex rel. v. Evatt, 144 Oh St 65.**

It is claimed that the pinball machine in question violates Regulation 53, Section II of said Board of Liquor Control, which prohibits the possession or use on the permit premises of any device which may or can be used for gaming or wagering, since this machine affords the privilege of free play or plays, based on the players' score, even though no token or other tangible article is delivered to the player.

Such Regulation 53 is based upon the power of the Board to adopt regulations, "with a view to insuring * * * the maintenance of public decency, sobriety and good order in any place licensed under such permits," issued pursuant to the Liquor Control Act. **Sec. 4301.03 (C) R. C.**

It requires a rather vivid stretch of one's imagination to accept a belief that the mere privilege of a free play, or even the exercise thereof, afforded by the pinball machine in question, would impair the maintenance of public decency in a place of business operated under a permit issued by the Department of Liquor Control, let alone its possible effect on the maintenance of sobriety and good order in such place of business. If it reasonably may be said that the privilege of such free play, or the exercise thereof, afforded by the machine in question, constitutes an impairment of public decency, or threatens the maintenance of public decency, then the inspectors and agents of the Department should refrain from playing such devices. There is no justification or need for one clothed with authority to enforce the police power of the sovereign state, to become a criminal himself in his zeal to enforce the law on others. Such a course of conduct causes disrespect for so-called law enforcement.

The Court's attention has been directed to the decision of Clifford, J., in the case of **Cavalier v. Board of Liquor Control,** No. 188,177, Dockets of this court **(69 Abs 4),** wherein it was held, the mere fact that free plays were given as the result of the achievement of the player did not make the machine a gambling device, or the exercise of the right, gambling. Also the earlier decision to the same effect by Bell, J., in the case of **Westerhaus Company, Inc., v. City of Cincinnati, etc.,** et al., No. A-129,385, Dockets of Hamilton County **(68 Abs 293),** Common Pleas Court.

"The doctrine of stare decisis, however, comes into operation, and makes a court disinclined to overrule a former decision. It has been said to be a general rule and practice for a judge of the Common Pleas Court to follow the former decisions of that court that are unreversed, even though made in a different case." **11 O. Jur. Courts, Sec. 128, p. 774;** Heintz v. Coldwell, 18 O. D. N. p. 725, 6 O. L. Rep. 45; **Merrick, et al. v. Merrick, et al., 57 Abs 49.**

"It is very evident that the simplest justice to our predecessors as well as the public, should prevent us from interfering with decisions deliberately made, merely because a difference of opinion might exist between them and us upon a doubtful and difficult question of construction." Ranney, J., delivering the opinion of the Court, **Kearney v. Buttles, 1 Oh St 362, 366; 11 O. Jur. Courts, Sec. 138, p. 786.**

This branch of the Court might well have differed with the opinion of Clifford, J., at the time, in the Cavalier case, supra; but the Appellee Board in the instant case, acquiesced in that opinion, and did not see fit to appeal therefrom, and cannot in good grace request this branch of the court to overrule the opinion of a colleague in a recent case, involving a very similar set of facts.

The Court of Appeals of Butler County, in the case of **Bradford v. Calhoun, 72 Oh Ap 333,** held that "a pinball machine is not a gambling device per se." In other words, the question of whether it is a gambling device depends not on its construction but on how it is used.

In the final analysis, the question of whether the right of free play or the exercise thereof, makes the machine in question a gambling device rather than a pure amusement device, depends on whether the additional amusement afforded by a high score must be considerd "a thing of value" within the meaning of §2915.16 **R. C.** In the light of the decisions of our courts, this "twilight zone" between amusement devices and gambling devices, must necessarily rest on an express declaration by the General Assembly of Ohio, just as the Columbus City Council acted to clear its doubt thereon; but the Board of Liquor Control not having been endowed with legislative authority, like the courts, themselves, should not make their function of rule-making a cloak for supplying something omitted by the General Assembly. Such Board must not undertake to supply any omission or to improve the provisions of any statute to meet a situation not provided for by law.

The Court, upon consideration of the entire record, fails to find that the order of the Board is supported by reliable,

probative and substantial evidence, and in accordance with law; and, therefore, reverses said order and sustains said appeal therefrom.