**BENJAMIN et, Plaintiffs, v. COLUMBUS (City) et, Defendants.**

Common Pleas Court, Franklin County.

No. 191975.  Decided May 9, 1956.

144

Owen B. Sherwood, McLeskey & McLeskey, for plaintiff.
Chalmers P. Wylie, City Atty., Russell Leach, Senior Asst. City Atty., for defendant.

## OPINION

By REYNOLDS, J.

In this case plaintiffs seek to enjoin defendants from enforcing the provisions of Ordinance No. 1615-54, which makes it unlawful for any person to have a device commonly known as a pinball game or machine in his possession or in his custody or under his control.

Each of the several plaintiffs is the owner of a number of pinball machines, which are placed in business establishments under a contract whereby the owners and merchants divide the revenue derived from their operation.

Judge Gessaman of this court granted a temporary restraining order against the enforcement of the ordinance in question, and the case is now before the court to determine whether that order should be made permanent or dissolved.

There are a number of different kinds of pinball machines involved but the principle and method of operation are the same. By the deposit of a coin a player receives the right to make a certain number of plays, always the same number. The play consists in propelling the balls by means of a plunger operated by the player and the balls in passing over the face or surface of the machine, come in contact or may come in contact with various obstacles and contacts with certain of these obstacles resulting in the recording of a score.

The object of the play is to see how high a score can be made, but supposedly the play is for amusement only since, unless a machine is especially equipped to reward the player with a free play or plays, dependent upon the score made, or the owner or custodian awards prizes for certain scores, the player receives nothing other than the satisfaction derived from the score made which is largely dependent upon chance, but somewhat on the skill and experience of the player.

In times past pinball machines were in the main designed and used as gambling devices, players being rewarded with coins, tokens redeemable in merchandise, money, etc., dependent primarily on chance. Such machines or devices were violative of the State statutes prohibitive of gambling.

Secs. 2915.01 to 2915.17 R. C., are all statutes designed to prohibit gambling in Ohio. Sec. 2915.15 R. C. has specific application to gambling devices, and provides as follows:

"No person shall keep or exhibit for gain or to win money or other property, a gambling table, or faro or keno bank, or a gambling device or machine, other than as is defined in §§2915.10, 2915.12, and 2915.16 R. C., or keep or exhibit a billiard table for the purpose of gambling or allow it to be so used. Whoever violates this section shall be fined not less than

fifty nor more than five hundred dollars and imprisonment not less than ten nor more than ninety days, and shall give security in the sum of five hundred dollars against further violation of this section for one year."

Sec. 2915.16 R. C. defines a gambling device as follows:

"(A) Any slot machine or any other machine or mechanical device, other than as is defined in §§2915.10 and 2915.12 R. C., an essential part of which is a drum or reel with insignia thereon which when operated may deliver, as the result of an element of chance, any money, property, or other thing of value or by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money, property, or other thing of value.

"(B) Any machine or mechanical device, other than as is defined in §§2915.10 and 2915.12 R. C., designed and manufactured to operate by means of insertion of a coin, token, or similar object so that when operated it may deliver as the result of the application of an element of chance, any money, property, or other thing of value; * * *"

From the above statutory definition, it appears that the pinball machines here under consideration are not gambling devices since, when operated, they do not deliver as a result of chance any money, property or other thing of value, nor may a person operating the same become entitled to receive as a result of chance any money or other thing of value.

So far then, as the State statutes are concerned, these pinball machines are not violative of the law.

Back in 1936 the Police Department began to or threatened to confiscate all pinball machines and in the case of Barok v. City of Columbus, No. 148,573, a permanent injunction was issued out of this court, prohibiting such confiscation, unless the machine or machines were actually being used for gambling.

In 1945 the Columbus City Council passed Ordinance 54-45 regulating pinball machines and providing that all such devices must be licensed by the city, and from that time until 1953 they were so operated under the regulatory and licensing provisions of that ordinance.

On March 19th, 1953, Council passed Ordinances Nos. 156-53 and 157-53. The purport of Sec. 156-53 is to provide for the seizure and destruction of any machine, device, instrument, apparatus or contrivance which tends to encourage gambling and may be used in a manner violative of the Code of the City of Columbus. Sec. 29-38 of Ordinance 157-53 provides as follows:

"It is hereby declared prejudicial to the public good, detrimental to the public morals and a nuisance, for any person to exhibit for the purpose of operating or to permit the operation of any machine, device or instrument in the City of Columbus, Ohio, of whatever kind or description, or by whatever name known or commonly referred to which tends to encourage gambling, or which registers odds or a score, or which is adapted, or may readily be converted into such machine, device or instrument that it adapted, for use in a manner violative of Sections 29.38-1, 29.40, 29.42, 29.42-1, and 29.42-2 of this chapter, and every machine so exhibited or permitted to be operated shall be subject

to seizure, by any police officer of the city, whether under the authority of this section or Section 29.39 or otherwise, shall be returned to the owner or person claiming the same except pursuant to an order of a court of competent jurisdiction."

Under these ordinances the City proposed to confiscate all pinball machines found in use in Columbus and suit was brought in this court to enjoin such action, being the case of **Ferguson et al., v. The City of Columbus,** Case No. 187,169, **70 Abs 277.**

The basis for the relief asked was similar to that in the instant case, namely that the ordinances were unconstitutional in that they (1) authorize seizure and confiscation of games without proof of their use for gambling purposes; (2) They impair the obligation of contract; (3) They take owners' property without due process of law: (4) are so vague, indefinite and uncertain as to constitute a denial of due process of law; (5) deny the owners equal protection of the law; and (6) constitute an unreasonable exercise of police power, attempt to delegate judicial and/or legislative power.

All of these claims were denied in the answer, but a further allegation that the ordinances described amended former ordinances which permitted the registration and licensing of the games involved, was admitted.

A temporary restraining order was granted and defendants filed an answer as above indicated, and then filed a motion for judgment on the pleadings, which motion was sustained by Judge Harter of this court.

On appeal to the Court of Appeals, this judgment was reversed on the grounds that the Court had erred in sustaining defendant's motion for judgment on the pleadings, in dissolving the temporary restraining order, and in entering final judgment in favor of defendants. The Court held that issues were raised by the pleadings which required a determination of facts by the Court from evidence adduced upon trial.

In commenting on Sec. 29.38 above quoted, the Court said:

"This section permits the seizure of the machines if they register odds or a score without the qualifying language which is carried into the penalty section of Sec. 29-42-2. It also authorizes the seizure of the machines if their operation 'tends to encourage gambling,' another provision that is not carried into the other penalty provisions of the ordinances. The section further authorizes any police officer to make the seizure, that is to say, if a police officer determines that the machines 'tend to encourage gambling' he may seize them.

"This section of the ordinance not only sets out the essential requisites upon which seizure may be made, but incorporates the other sections of the ordinance and provides that if the machines come within any specific characterization of the section or are violative of any other named sections of the ordinances, they may be seized. * * * The provision for seizure, of Section 29-38 of the ordinance under consideration, is invoked upon the declaration that operations such as are therein defined, constitute a nuisance which may be abated. The City has wide police power in defining and declaring what shall constitute a nuisance. Insofar as the section authorizes seizure of machines that are gambling

devices, per se, or operate in a manner described which is recognized as gambling, there is no doubt as to its validity, but: 'The mere declaration in an ordinance that is enacted to protect public safety, health or morals will not render it valid as being within the police power unless there is some reasonable relation between such purpose and the regulations prescribed.' " **Youngstown v. Kahn Bros., 112 Oh St 654.**

* * * "The Legislature can prohibit only those uses of property which are hurtful to the public, and the inhibited use must be hurtful in a legal sense. * * * We do not hold that the ordinance is invalid because it characterizes as a nuisance the operation of a machine, therein described, 'which tends to encourage gambling.' It is the method of making determination of this essential of a nuisance as a basis of a seizure of the machine which we cannot support. There is no authority in statutory law for the seizure of the machines here under consideration upon the averments of the petition other than as an incident to conviction."

Thereafter to avoid the effect of this decision, Council passed Ordinance No. 1615.54, which, with the preamble, is as follows:

"To prohibit the possession of pin-ball and certain other similar machines; to supplement the Code of the City of Columbus, 1952, by the enactment of Section 29.69-1 thereof; and to declare an emergency.

"Whereas, the operation of pin-ball machines and similar machines involving chance or skill or reward encourages gaming and the general disorder incident thereto, and is a threat or menace to the peace and morals of the community; and,

"Whereas, even the so-called amusement-only pin-ball machines are so constructed as to be almost identical in appearance and operation to certain gambling devices, per se; and,

"Whereas, even the vast majority of such so-called amusement-only devices are readily convertible to gambling devices; and,

"Whereas, the operation of even amusement-only pin-ball machines has become and now constitutes a nuisance in that it encourages a false sense of values, idling, and loitering; and,

"Whereas, an emergency exists in that such pin-ball machines are now generally absent from the city, but will return unless immediately prohibited; and for the immediate preservation of the public peace and safety; now, therefore,

"Be it ordained by the council of the city of Columbus;

"Section 1. That the Code of the City of Columbus, 1952, be and the same is hereby supplemented by the enactment of new Section 29.69-1 thereof, which said section shall read as follows:

" 'Section 29.69-1. Pinball machines, Prohibited. Whoever shall within the city have in his possession, or in his custody or under his control any table game or device commonly known as a "pin game," "pinball game," or "marble game," the operation, use or play of which is controlled by placing therein any coin, plate, disk, plug, key or other token, or by the payment of a fee, shall be guilty of a misdemeanor and upon conviction shall be fined not more than five hundred dollars, or imprisoned not more than six months, or both.'

"Sec. 2. That for the reasons stated in the preamble hereto, this

ordinance is hereby declared to be an emergency measure and shall take effect and be in force from and after its passage and approval by the mayor.

Passed December 6, 1954.  O. J. Fillinger, President of Council.
Approved December 7, 1954.  M. E. Sensenbrenner, Mayor.
Attest:  Agnes Brown Cain, City Clerk."

This ordnance makes it unlawful to possess or operate any pinball machine, irrespective as to whether it is being used for gambling purposes. The theory apparently being that since players may gamble on the outcome of games played, or the owner or operator might award prizes resultant on certain scores, in order to avoid any such possibility, no pinball machines will be allowed to be owned or operated.

The evidence in this case fails to show that the operation of pinball machines for amusement only encourages gaming or disorder or is inimical to the peace and morals of the community.  While it is true that the appearance generally of the pinball machines under consideration is similar to those used for gambling, the similarity stops with the appearance.

The essential difference is that they are not equipped or intended to be used as gambling devices, in that each player receives the same number of chances to play for a given deposit, and no one receives or is entitled to receive anything other than amusement or pleasure as the result of his play.  They are not readily convertible to gambling devices, but such a change entails the services of a skilled mechanic for an appreciable time, and all the evidence as to the machines in question is that they are not to be so converted.

The evidence fails to support the claim that the operation of these strictly amusement machines constitutes a nuisance, or that an emergency existed by reason of their operation or expected operation, and the conclusions set out in the preamble of the ordinance are not supported by the facts adduced in this case.

That pinball machines designed for gambling and used for that purpose have been rather common, in the past, did encourage gambling and constituted a nuisance, there can be little doubt, nor can there be any question but that under city ordinances or state statutes such use may be and is prohibited.  The question then remains as to whether the City has the outhority to prohibit by ordinance the use and operations of pinball machines which are merely designed and utilized for amusement purposes.

Among the cases cited by defendants are two Georgia cases, one of which is Baker v. LaFayette, 44 S. E. 2nd, 255, in which a city ordinance was involved which in part reads as follows:

"Section One.  That from and after the 10th day of January, 1942, it shall be unlawful for any person, firm or corporation, to own, maintain, or operate any pinball machine, or similar machine, including all machines operated by depositing a coin therein for the playing of a game or engaging on any contest of chance or skill, including vending machines where the amount of merchandise to which the customer or person playing the machines is entitled, is uncertain, or may in some instances be a larger amount than in other instances."

The Court held that:

"Pinball machines operated solely for pleasure * * * were within ordinance prohibiting ownership and operation of pin ball machines operated by depositing a coin for playing a game or engaging in any contest of chance or skill."

In that case, however, the decision seems to have been decided on the basis of the authority contained in the Charter granted to the City of LaFayette, section 29 of which was referred to in the decision as follows:

"Section 29 of the Charter of the City of LaFayette conferred authority upon the mayor and council to license, regulate and control * * * every keeper of a shooting gallery, nine pin, or ten pin alley, upon the keeper of any other table, stand or place for the performance of any game or play whether played with stick or ball, ring or other contrivances * * * and upon all establishiments, business callings or avocations not hereinbefore mentioned, and which under the laws and constitution of the State of Georgia are subject to license."

In the opinion the Court said that:

"Under the Charter of the City of LaFayette, the mayor and council had authority to pass the ordinance in question."

The decision is short, the Court evidently concluding that the authority to control was authority to prohibit without any discussion on that point.

To the same effect is the case of Wallace v. Cartersville, 45 S. E. 2nd 63, which is another Georgia Case and decided by the same Court, the first syllabus of which is as follows:

"Municipalities have authority under their charters to pass local ordinances prohibiting operation and maintenance of pinball machines within their corporate limits."

In the case of Ex parte Lawrence, 131 Pac. 2nd, 27, an ordinance of the City of Long Beach was involved, in which the Court held the ordinance "prohibiting maintenance and possession of pin games and other named games in places of business or other places of public resort * * * is not "prohibitory" but "regulatory" only, and hence within the scope and purview of "police power."

In its opinion the Court said:

"In the case now before us regulation, not prohibition is decreed by the ordinance. The games are proscribed only in places of business, or in any other 'place of public resort,' and exception is made of the amusement games described in another Long Beach ordinance. In other words 'pin ball' and other games denominated in the ordinance may be maintained at private houses or in certain delineated amusement zones, but not generally in places of business or public resort. The ordinance is not prohibitory, but regulatory only, and as such is unquestionably within the scope and purview of the police power."

To the same effect is the case of Sharpe v. Johnson, 185 Pac. 2nd. 340, in which the ordinance of the City of Laguna Beach is involved prohibited maintenance of any table game, marble game or similar device in places of business or other public resort, and the Court again held that such ordinance was regulatory only and not prohibitory.

From a reading of these California decisions, one is impressed with the conclusion that had the ordinances been absolutely prohibitory, as the Columbus ordinance is, a different result would probably have been reached.

In the case of Kitt v. Chicago, 112 N. E. 2nd, 607, involved the question as to whether a certain game came within the meaning of a City Ordinance enacted pursuant to an enabling statute which granted authority to municipalities "To license, tax, regulate or prohibit pinball, or bowling alleys, billiard, bagatelle, pigeonhole, pool, or any other tables or implements kept for a similar purpose in any place of public resort.

Pursuant to this authority the Chicago City Council adopted an ordinance prohibiting Bagatelle and pigeonhole, and defined the meaning of those terms.

The Court simply held that an electric bowling game was not included within the definition of the proscribed games, and since the ordinance was restricted to those two games, the operation of an electric bowling game was not a violation of the ordinance.

In the case of Green v. Fifth Inning Base Ball Machine, 3 So. 2nd, 27, the Supreme Court of Alabama had under consideration a statute for the suppression of gambling devices and the court held that the device called a fifth inning baseball machine, which was operated by placing a nickel in slots, which released certain balls and by ejecting balls on board by pulling a plunger and striking against the balls, which would then strike projections or bumpers on the board, a higher score resulting by striking certain numbers than by striking others, was a "game of chance" subject to condemnation as a "gambling device," under codal provisions relating to suppression of gambling devices and thus whether the devices are used for gambling or players are offered inducement by way of prizes or other rewards. Among other things the Court said:

"We think it clear enough from the language of this act, especially definition (d), that the law making body deemed it necessary to prohibit all such machines and devices which could be operated as a game of chance, regardless as to whether there was a 'pay off' or not, in order to fully repress the gambling evil. That this was within the police power of the state and violated no provision of the constitution, either State or Federal, is well demonstrated in the Eccles case, supra, as well as in our own case of State v. Murphy, 237, Ala. 332."

As before stated, this case involved a state statute which might well have more force and effect than a City Ordinance. The Court discussed a case in Arkansas as follows:

"The Arkansas court in Stanley v. State, 194 Ark. 483, had for consideration this same character of machine, and the holding was that it was 'susceptible to use as a gambling device' and came within the condemnation of the statute. See also Steed v. State, 189 Ark. 389, where the observation was that such machines are gambling devices 'because the only reasonable and profitable use to which they may be put is use in a game of chance.'"

This observation is directly contrary to the evidence in this case which was that the use of the machines purely for amusement was quite profitable.

This decision is not helpful here in view of the statutory definition of a gambling device in this state which has heretofore been quoted.

In the case of **Westerhaus Co. v. Cincinnati, 68 Abs 293,** there was under consideration a city ordinance which provided as follows:

"It shall be unlawful for an exhibitor or other person to exhibit, operate or have in his possesson a pinball machine which is not constructed as to make possible, either directly, or by use of an adjustment, the return of cash, tickets, discs or other tokens or certificates of any kind to a player operating the same, whether or not such tokens or certificates have a value of any kind or authorize further playing or other privileges. Only machines operated exclusively for the amusement provided by the operation shall be licensed."

The effect of the decision in that case was that the possession or operation of a pinball machine was not a violation of the ordinance unless actually used for gambling purposes and the provision in the ordinance as to the possibility of use for gambling was not discussed.

In his opinion overruling defendants' demurrer to the petition, Judge Gessaman quoted from the case of **Frecker v. Dayton, 88 Oh Ap 53,** the third syllabus of which is as follows:

"The police power granted to municipalities under **Sec. 3, Article XVIII of the Ohio Constitution** includes the power to 'regulate' but not the power to 'prohibit.' 'Regulation' does not include 'prohibition,' unless the object of the legislative regulation is an inherently evil occupation trade or business.

"* * * Whether the machines in question are or create an inherently evil occupation, trade or business, cannot be determined on demurrer. It is a factual question which will be controlled by the evidence.

If used as gambling devices these machines or any machines would create an inherently evil trade or business, but used solely for amusement, which is the effect of the evidence in this case, it is difficult to conclude that they constitute a nuisance or create an inherently evil business.

The ordinances in question being absolutely prohibitory are beyond the authority of council to enact. As drawn the ordinances, if valid, would preclude the possession of a pinball machine in a private home, solely for the amusement of the owner, his family and friends, and this Court is of the opinion that council has no authority to enact such prohibitory legislation.

It might be suggested that the evil consequent on the use of pinball machines for amusement, if such evil exists, could easily be corrected by patterning an ordinance after those of Long Beach and LaGuna Beach in which possession and operation in business or public places be prohibited. This, as pointed out in the California cases, would be "regulation" and not "prohibition" as provided in the present ordinances.

Concluding then that the ordinances under consideration are prohibitory rather than regulatory, and therefore beyond the power of council under the constitution to enact, the motion to dissolve the restraining order is overruled and the order made permanent. An entry may be prepared accordingly.